**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| MARTHA SELF, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| HAMILTON HEALTH CARE SYSTEMS, INC. d/b/a VITRUVIAN HEALTH, and NATIONWIDE RECOVERY SERVICE, INC., | |
| Defendants. | |

Plaintiff Martha Self ("Plaintiff"), individually and on behalf of all others similarly situated, and on behalf of the general public, brings this Class Action Complaint, against Defendants Hamilton Health Care Systems, Inc. d/b/a Vitruvian Health ("Vitruvian Health") and Nationwide Recovery Service, Inc. ("NRS") (collectively, "Defendants") based on personal knowledge and the investigation of counsel, and alleges as follows:

## I.    INTRODUCTION

1.    With this action, Plaintiff seeks to hold Defendants responsible for the harms they caused Plaintiff and similarly situated persons in the preventable data breach of Defendants' inadequately protected computer network.

2.    On or around July 11, 2024, Vitruvian Health were advised by NRS, a third-party collection agency used by Vitruvian Health, identified suspicious

activity on its computer systems, indicating a data breach.[1] Based on a subsequent forensic investigation, Defendants determined that cybercriminals infiltrated the inadequately secured computer environment and accessed certain data files (the "Data Breach"). The investigation further determined that, through this infiltration, cybercriminals accessed and stole files containing the sensitive personal information of tens of thousands of Vitruvian Health patients.[2]

3.     According to Defendants, the personal information accessed by cybercriminals involved a wide variety of personally identifiable information ("PII") and protected health information ("PHI"), including names, dates of birth, Social Security numbers, financial account information, and medical information (collectively, "Personal Information").[3]

4.     NRS is collection agency that provided collection services to Vitruvian Health.

5.     Vitruvian Health provides healthcare and medical services, operating centers in Georgia and Tennessee.

6.     As part of their business, and in order to gain profits, Defendants obtained and maintained the Personal Information of Plaintiff and Class members.

---

[1] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/d271aa0a-908e-4430-bfe3-e9223d43cd21.html.
[2] Id.
[3] Id.

7.      By taking possession and control of Plaintiff's and Class members' Personal Information, Defendants assumed a duty to securely store and protect the Personal Information of Plaintiff and the Class.

8.      Defendants breached this duty and betrayed the trust of Plaintiff and Class members by failing to properly safeguard and protect their Personal Information, thus enabling cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

9.      Defendants' misconduct – failing to implement adequate and reasonable measures to protect Plaintiff's and Class members' Personal Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices in place to safeguard the Personal Information, and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiff and Class members across the United States.

10.     Due to Defendants' negligence and failures, cyber criminals obtained and now possess everything they need to commit personal identity theft and wreak havoc on the financial and personal lives of thousands of individuals, for decades to come.

11.     Plaintiff brings this class action lawsuit to hold Defendants responsible for their grossly negligent—indeed, reckless—failure to use statutorily required or

reasonable industry cybersecurity measures to protect Class members' Personal Information.

12.    As a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Personal Information has been released into the criminal cyber domains, Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and using their Personal Information.

13.    Additionally, Plaintiff and Class members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

14.    Plaintiff brings this action individually and on behalf of the Class and seeks actual damages and restitution.  Plaintiff also seeks declaratory and injunctive relief, including significant improvements to Defendants' data security systems and protocols, future annual audits, Defendant-funded long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

## II.    THE PARTIES

15.    Plaintiff Martha Self is a citizen and resident of Georgia.

16.    Defendant Nationwide Recovery Service, Inc. upon information and belief is a Tennessee for-profit corporation with principal offices across 50

states. It has a Tennessee principal office at 545 West Inman Street, Cleveland, TN 37211.

17.    Defendant Hamilton Health Care System, Inc. d/b/a Vitruvian Health is a nonprofit corporation with a principal place of business at 1200 Memorial Drive, Dalton, Georgia 30722. Its registered agent Savannah B. Moore can be served at its principal place of business.

## III.    JURISDICTION AND VENUE

18.    Plaintiff incorporates by reference all allegations of the preceding and forthcoming paragraphs as though fully set forth herein.

19.    The Class Action Fairness Act (CAFA) confers diversity jurisdiction to a class action where (1) the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and (2) "*any* member of a class of Plaintiff is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d)(2) (emphasis added).

20.    This Court has diversity jurisdiction over this action under CAFA, 28 U.S.C. § 1332(d), because this is a class action consisting of more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a State that differs from any Defendant.

21.    This Court has personal jurisdiction over Defendants because Defendants conduct business in this District, with Vitruvian Health maintaining its

principal place of business in this District, and have sufficient minimum contacts with the State.

22.    Venue is likewise proper as to Defendants in this District under 28 U.S.C. § 1391(a)(1) because Defendants' principal place of business is in this District and/or have members who reside in this District, and therefore Defendants resides in this District pursuant to 28 U.S.C. § 1391(c)(2). Venue is further proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Class's claims also occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    The Data Breach and Defendants' Notice

23.    On or around July 11, 2024, Vitruvian Health were advised by NRS, a third-party collection agency used by Vitruvian Health, identified suspicious activity on its computer systems, indicating a data breach.[4] Based on a subsequent forensic investigation, Defendants determined that cybercriminals infiltrated the inadequately secured computer environment and accessed certain data files. The investigation further determined that, through this infiltration, cybercriminals accessed and stole files containing the sensitive personal information of tens of thousands of Vitruvian Health patients.[5]

---

[4] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/d271aa0a-908e-4430-bfe3-e9223d43cd21.html.
[5] *Id.*

24.     According to Defendants, the personal information accessed by cybercriminals involved a wide variety of personally identifiable information, including names, dates of birth, Social Security numbers, financial account information, and medical information.[6]

25.     Despite the breadth and sensitivity of the PII/PHI that was exposed, and the attendant consequences to patients as a result of the exposure, Defendants failed to disclose the Data Breach for months from the time of the Breach. This inexplicable delay further exacerbated the harms to Plaintiff and Class members.

26.     Based on the notice letter received by Plaintiff, the type of cyberattack involved, and public news reports, it is plausible and likely that Plaintiff's Personal Information was stolen in the Data Breach.

27.     Upon information and belief, the unauthorized third-party cybercriminal gained access to the Personal Information and has engaged in (and will continue to engage in) misuse of the Personal Information, including marketing and selling Plaintiff's and Class members' Personal Information on the dark web.

28.     Accordingly, Defendants had obligations created by industry standards, common law, statutory law, and its own assurances and representations to keep Plaintiff and Class members' Personal Information confidential and to protect such Personal Information from unauthorized access.

---

[6] *Id.*

29.     Nevertheless, Defendants failed to spend sufficient resources on preventing external access, detecting outside infiltration, and training its employees to identify email-borne threats and defend against them.

30.     The stolen Personal Information at issue has great value to the hackers, due to the large number of individuals affected and the fact the sensitive information that was part of the data that was compromised.

**B.      Plaintiff's Experience**

31.     In exchange for medical services, Plaintiff entrusted her Personal Information to Defendant Vitruvian Health, which in turn provided Plaintiff's Personal Information to Defendant NRS for administrative purposes.

32.     Defendants were required to protect and maintain the confidentiality of Personal Information entrusted to it.

33.     Plaintiff received a notice letter from Vitruvian Health informing her that her Personal Information was specifically identified as having been exposed to cybercriminals in the Data Breach.

34.     Plaintiff is very careful with her personal information.

35.     Plaintiff and Class members' Personal Information was entrusted to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

36.    Because of the Data Breach, Plaintiff's Personal Information is now in the hands of cyber criminals. Plaintiff and all Class members are now imminently at risk of crippling future identity theft and fraud.

37.    As a result of the Data Breach, Plaintiff has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, researching how best to ensure that she is protected from identity theft, reviewing account statements and other information, and taking other steps in an attempt to mitigate the harm caused by the Data Breach.

38.    Plaintiff is experiencing significant stress and anxiety as a result of learning that her Personal Information is in the hands of unauthorized cybercriminals.

39.    Plaintiff has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff's valuable Personal Information; (b) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff's Personal Information being placed in the hands of cybercriminals; (c) damages to and/or diminution in value of Plaintiff's Personal Information that was entrusted to Defendants with the understanding that Defendants would safeguard this information against disclosure; (d) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff should have received

from Defendants and Defendants' defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff's Personal Information; and (e) continued risk to Plaintiff's Personal Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the Personal Information that was entrusted to Defendants.

### C.    Defendants had an Obligation to Protect Personal Information under the Law and the Applicable Standard of Care

40.    Defendants also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

41.    Defendants are further required by various states' laws and regulations to protect Plaintiff's and Class members' Personal Information.

42.    Defendants owed a duty to Plaintiff and the Class to design, maintain, and test its computer and application systems to ensure that the Personal Information in its possession was adequately secured and protected.

43.    Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal Information in its possession, including adequately training its employees (and others who accessed Personal Information within its computer systems) on how to adequately protect Personal Information.

44.    Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach on its systems in a timely manner.

45.    Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

46.    Defendants owed a duty to Plaintiff and the Class to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal Information with Defendants.

47.    Defendants owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

48.    Defendants owed a duty of care to Plaintiff and the Class because it was a foreseeable victim of a data breach.

**D.    Defendants Fail to Comply with HIPAA Guidelines**

49.    Defendants are covered entity under HIPAA (45 C.F.R. § 160.102) and are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually

Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

50.    Defendants are subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[7] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

51.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

52.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

53.    HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

54.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

---

[7] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

55.    HIPAA's Security Rule requires Defendants to do the following:

    a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.    Ensure compliance by its workforce.

56.    HIPAA also requires Defendants to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendants are required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

57.    HIPAA and HITECH also obligated Defendants to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

58.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[8]

59.    HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

60.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

61.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the

---

[8]    Breach    Notification    Rule,    U.S.    Dep't    of    Health    &    Human    Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).

confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[9] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[10]

### E. Defendants were on Notice of Cyber Attack Threats and of the Inadequacy of their Data Security

62.    Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell you the names of some of the biggest cybersecurity breaches: Target,[11] Yahoo,[12] Marriott International,[13] Chipotle, Chili's, Arby's,[14] and others.[15]

---

[9] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.
[10]           https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html
[11] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.
[12] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.
[13] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/.
[14] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.
[15] *See, e.g.*, Taylor Armerding, *The 18 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Dec. 20, 2018), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

63.    Defendants should certainly have been aware, and indeed was aware, that it was at risk for a data breach that could expose the Personal Information that it collected and maintained.

64.    Defendants were also on notice of the importance of data encryption of Personal Information. Defendants knew it kept Personal Information in its systems and yet it appears Defendants did not encrypt these systems or the information contained within them.

**F.    Cyber Criminals Will Use Plaintiff's and Class Members' Personal Information to Defraud Them**

65.    Plaintiff and Class members' Personal Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

66.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[16] For example, with the Personal Information stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, collect government benefits, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal benefits, give breach victims' names to police during arrests, and

---

[16]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

many other harmful forms of identity theft.[17] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

67.    Personal Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[18]

68.    Based on the foregoing, the information compromised in the Data Breach is    significantly more valuable    than the loss of, for example, credit card information in a retailer data breach because there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

69.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[19]

70.    This was a financially motivated Data Breach, as apparent from the discovery of the cyber criminals seeking to profit off the sale of Plaintiff's and the

---

[17] https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/.
[18] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737.
[19] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x- price-of-stolen-credit-card-numbers.html.

Class members' Personal Information on the dark web. The Personal Information

exposed in this Data Breach are valuable to identity thieves for use in the kinds of

criminal activity described herein.

71.    These risks are both certainly impending and substantial. As the FTC

has reported, if hackers get access to personally identifiable information, they will

use it.[20]

72.    Hackers may not use the accessed information right away. According

to the U.S. Government Accountability Office, which conducted a study regarding

data breaches:

> [I]n some cases, stolen data may be held for up to a year or more
> before being used to commit identity theft. Further, once stolen
> data have been sold or posted on the Web, fraudulent use of that
> information may continue for years. As a result, studies that
> attempt to measure the harm resulting from data breaches cannot
> necessarily rule out all future harm.[21]

73.    As described above, identity theft victims must spend countless hours

and large amounts of money repairing the impact to their credit.[22]

74.    With this Data Breach, identity thieves have already started to prey on

the victims, and one can reasonably anticipate this will continue.

---

[20]Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.
[21] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737.
[22] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

75.    Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[23]

76.    In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

77.    Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

        a.    Trespass, damage to, and theft of their personal property including Personal Information;

        b.    Improper disclosure of their Personal Information;

        c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal

---

[23] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

Information being placed in the hands of criminals and having been already misused;

    d.    The imminent and certainly impending risk of having their Personal Information used against them by spam callers to defraud them;

    e.    Damages flowing from Defendants' untimely and inadequate notification of the data breach;

    f.    Loss of privacy suffered as a result of the Data Breach;

    g.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

    h.    Ascertainable losses in the form of deprivation of the value of patients' personal information for which there is a well-established and quantifiable national and international market;

    i.    The loss of use of and access to their credit, accounts, and/or funds;

    j.    Damage to their credit due to fraudulent use of their Personal Information; and

    k.    Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

78.    Moreover, Plaintiff and Class members have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendants has shown itself to be incapable of protecting Plaintiff's and Class members' Personal Information.

79.     Plaintiff and Class members are desperately trying to mitigate the damage that Defendants has caused them but, given the Personal Information Defendants made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Personal Information, Plaintiff and all Class members will need to have identity theft monitoring protection for the rest of their lives.

80.     None of this should have happened. The Data Breach was preventable.

**G.     Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal Information**

81.     Data breaches are preventable.[24] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[25] he added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[26]

82.     "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be

---

[24]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[25]*Id.* at 17.
[26]*Id.* at 28.

implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[27]

83.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

84.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.7 The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[28]

---

[27] *Id.*

[28] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Jan. 19, 2022).

85.    The FTC further recommends that companies not maintain Personal Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

86.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

87.    These FTC enforcement actions include actions against healthcare providers and partners like Defendants. *See, e.g., In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

88.    Defendants failed to properly implement basic data security practices, including those set forth by the FTC.

89. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

90. Defendants also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

91. Defendants were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of Plaintiff's and Class Members' Personal Information.

92. Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendants' failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class members' Personal Information.

93. Defendants were at all times fully aware of its obligation to protect the Personal Information of Plaintiff and Class members. Defendants were also aware of the significant repercussions that would result from its failure to do so.

94.     Defendants maintained the Personal Information in a reckless manner. In particular, the Personal Information was maintained and/or exchanged, unencrypted, in Defendants' systems and were maintained in a condition vulnerable to cyberattacks.

95.     Defendants knew, or reasonably should have known, of the importance of safeguarding Personal Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

96.     The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class members' Personal Information was a known risk to Defendants, and thus Defendants were on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal Information from those risks left that information in a dangerous condition.

97.     Defendants disregarded the rights of Plaintiff and Class members by, inter alia, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing

the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## V.    CLASS ACTION ALLEGATIONS

98.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

99.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23.

100.    Plaintiff asserts all claims on behalf of the Nationwide Class, defined as follows:

> All persons residing in the United States whose personal information was compromised during the Data Breach, including those who received a breach notice letter.

101.    Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

102.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

103.    **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable.

104.    **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are

identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal Information compromised in the same way by the same conduct of Defendants.

105.  **Adequacy:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class that she seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

106.  **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of

single adjudication, economy of scale, and comprehensive supervision by a single court.

107.  **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.  Whether Defendants engaged in the wrongful conduct alleged herein;

b.  Whether Defendants failed to adequately safeguard Plaintiff's and the Class's Personal Information;

c.  Whether Defendants' email and computer systems and data security practices used to protect Plaintiff's and Class members' Personal Information violated the FTC Act, and/or state laws and/or Defendants' other duties discussed herein;

d.  Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their Personal Information, and whether it breached this duty;

e.  Whether Defendants knew or should have known that its computer and network security systems and business email accounts were vulnerable to a data breach;

f.  Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

g.  Whether Defendants breached contractual duties owed to Plaintiff and the Class to use reasonable care in protecting their Personal Information;

h.    Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.    Whether Defendants continues to breach duties to Plaintiff and the Class;

j.    Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

k.    Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l.    Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class and the general public;

m.    Whether Defendants' actions alleged herein constitute gross negligence; and

n.    Whether Plaintiff and Class members are entitled to punitive damages.

## VI.    CAUSES OF ACTION

### <u>COUNT ONE</u>

### NEGLIGENCE

108.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

109.    Defendants solicited, gathered, and stored the Personal Information of Plaintiff and the Class as part of the operation of their business.

110.   Upon accepting and storing the Personal Information of Plaintiff and Class members, Defendants undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

111.   Defendants had full knowledge of the sensitivity of the Personal Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal Information was wrongfully disclosed, and the importance of adequate security.

112.   Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices on the part of Defendants. Plaintiff and the Class members had no ability to protect their Personal Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiff and the Class.

113.   Defendants were well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive personal information.

114.   Defendants owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to

Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

115.   Defendants' duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

116.   Defendants had duties to protect and safeguard the Personal Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Personal Information. Additional duties that Defendants owed Plaintiff and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Personal Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiff's and Class members' Personal Information in its possession by using reasonable and adequate security procedures and systems;

       c.      To implement processes to quickly detect a data breach, security incident, or intrusion involving its business email system, networks and servers; and

       d.      To promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Personal Information.

117.   Only Defendants were in a position to ensure that its systems and protocols were sufficient to protect the Personal Information that Plaintiff and the Class had entrusted to it.

118.   Defendants breached its duty of care by failing to adequately protect Plaintiff's and Class members' Personal Information. Defendants breached its duties by, among other things:

       a.      Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal Information in its possession;

       b.      Failing to protect the Personal Information in its possession by using reasonable and adequate security procedures and systems;

       c.      Failing to adequately and properly audit, test, and train its employees to avoid phishing emails;

       d.      Failing to use adequate email security systems, including healthcare industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

     e.    Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Personal Information;

     f.    Failing to adequately train its employees to not store Personal Information longer than absolutely necessary for the specific purpose that it was sent or received;

     g.    Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal Information;

     h.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

     i.    Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal Information.

119.   Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

120.   As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

121.   Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Personal Information of Plaintiff and Class members from being stolen and misused, Defendants unlawfully breached its duty to use reasonable care to adequately protect and secure the Personal Information of Plaintiff and Class members while it was within Defendants' possession and control.

122.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Defendants prevented Plaintiff and Class members from taking meaningful, proactive steps toward securing their Personal Information and mitigating damages.

123.    As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies.

124.    Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

125.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

126.    In addition to its duties under common law, Defendants had additional duties imposed by statute and regulations, including the duties under the FTC Act. The harms which occurred as a result of Defendants' failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

127.    Defendants violated these statutes when it engaged in the actions and omissions alleged herein, and Plaintiff's and Class members' injuries were a direct

and proximate result of Defendants' violations of these statutes. Plaintiff therefore is entitled to the evidentiary presumptions for negligence *per se*.

128.   Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendants owed a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Personal Information of Plaintiff and the Class.

129.   The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Personal Information. The FTC publications and orders described above also formed part of the basis of Defendants' duty in this regard.

130.   Defendants gathered and stored the Personal Information of Plaintiff and the Class as part of its business of soliciting and facilitating its services to its patients, which affect commerce.

131.   Defendants violated the FTC Act by failing to use reasonable measures to protect the Personal Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

132.   Defendants breached its duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class members' Personal Information, and by failing to provide prompt and specific notice without reasonable delay.

133.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

134.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

135.    Defendants breached its duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Personal Information.

136.    Defendants breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

137.    As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

138.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendants' negligence.

139.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

## COUNT TWO
### UNJUST ENRICHMENT

140.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

141.    Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

142.    Plaintiff and Class Members conferred a benefit on Defendants in the form of profits or services rendered as employees. A portion of the economic benefits conferred was intended to have been used by Defendants for data security measures to secure Plaintiffs' and Class Members' PII.

143.    Defendants enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants chose to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide adequate security.

144.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the full value of its profits resulting from its collection and storage of the Plaintiffs' and Class Members' PII, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

145.    If Plaintiffs and Class Members knew that Defendants had not secured their PII, they would not have agreed to disclose their data to Defendants' clients.

146.    Defendants collected, maintained, and stored the Personal Information of Plaintiff and Class members and, as such, Defendants had direct knowledge of the monetary benefits conferred upon it (including the use of valuable Personal Information for business purposes and financial gain).

147.    Defendants, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with the entities that collected Plaintiff's and the Class members' Personal Information, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on reasonable data privacy and security measures to secure Plaintiff's and Class members' Personal Information.

148.    Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Personal Information, Defendants, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class members.

149.    Defendants failed to implement—or adequately implement—data security practices, procedures, and programs to secure sensitive Personal Information, including without limitation those industry standard data security practices, procedures, and programs discussed herein.

150.   As a direct and proximate result of Defendants' decision to profit rather than provide adequate data security, Plaintiff and Class members suffered and continue to suffer actual damages, including (i) the amount of the savings and costs Defendants reasonably and contractually should have expended on data security measures to secure Plaintiff's Personal Information, (ii) time and expenses mitigating harms, (iii) diminished value of Personal Information, (iv) loss of privacy, (v) harms as a result of identity theft; and (vi) an increased risk of future identity theft.

151.   Defendants, upon information and belief, has therefore engaged in opportunistic and unethical conduct by profiting from conduct that it knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiff and the Class in direct violation of Plaintiff's and Class members' interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendants to retain the benefits it derived as a consequence of its wrongful conduct.

152.   Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

## COUNT THREE
### BREACH OF IMPLIED CONTRACT

153.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

154.   Plaintiff and Class Members were required to provide Defendants with their Personal Information in order to receive medical care.

155.   When Plaintiff and Class Members provided their Personal Information to Defendants, they entered into implied contracts in which Defendants agreed to comply with its statutory and common law duties to protect their Personal Information and to timely notify them in the event of a Data Breach.

156.   Based on Defendants' representations, legal obligations, and acceptance of Plaintiff's and the Class Members' Personal Information, Defendants had an implied duty to safeguard their Personal Information through the use of reasonable industry standards.

157.   Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class Members' Personal Information and failing to provide them with timely and accurate notice of the Data Breach.  Indeed, it took Defendants months to warn Plaintiff and Class Member of their imminent risk of identity theft. Defendants also failed to notify Plaintiff and the Class Members whether or not their driver's license numbers were compromised, leaving Plaintiff and Class Members unsure as to the extent of the information that was compromised.

158.   As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and the Class Members have suffered damages, including foreseeable consequential damages that Defendants knew about when it requested Plaintiff's and the Class Members' Personal Information

159.   Plaintiff and Class Members were required to provide Defendants with their Personal Information in order to receive pharmaceuticals and/or services.

160.   When Plaintiff and Class Members provided their Personal Information to Defendants when seeking care or services, they entered into implied contracts in which Defendants agreed to comply with its statutory and common law duties to protect their Personal Information and to timely notify them in the event of a Data Breach.

161.   Based on Defendants' representations, legal obligations, and acceptance of Plaintiff's and the Class Members' Personal Information, Defendants had an implied duty to safeguard their Personal Information through the use of reasonable industry standards. This implied duty was reinforced by Defendants' representations in its HIPAA disclosures.

162.   Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class Members' Personal Information and failing to provide them with timely and accurate notice of the Data Breach.  Indeed, it took Defendants months to warn Plaintiff and Class Member of their imminent risk of identity theft. The vagueness of the breach notification also left Plaintiff and Class Members unsure as to the extent of the information that was compromised.

163.   As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and the Class Members have suffered damages, including

foreseeable consequential damages that Defendants knew about when it requested Plaintiff's and the Class Members' Personal Information.

## COUNT FOUR
## BREACH OF FIDUCIARY DUTY

164.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

165.   At all relevant times hereto, Defendants owed, and owes, a fiduciary duty to Plaintiff and the Class, including its duty to keep Plaintiff and Class Members' Personal Information reasonably secure.

166.   The fiduciary duty to patients is explicated under the procedures set forth in the Health Insurance Portability and Accountability Act Privacy Rule, including, without limitation the procedures and definitions of 45 C.F.R. §160.103 and 45 C.F.R. §164.530, which required Defendants to apply appropriate administrative, technical, and physical safeguards to protect the privacy of patient information and to secure the health care information it maintains and to keep it free from disclosure.

167.   Defendants also owed fiduciary duties to employees based on their employer/employee relationship.

168.   Defendants breached its fiduciary duty to Plaintiff by failing to implement sufficient safeguards and by disclosing Plaintiff's and other Class Members' Personal Information to unauthorized third parties.

169.    As a direct result of Defendants' breach of its fiduciary duty of confidentiality and the disclosure of Plaintiff's confidential Personal Information, Plaintiff and the Class Members have suffered damages.

170.    As a direct result of Defendants' breach of its fiduciary duty and the disclosure of Plaintiff's and Class Members' Personal Information, Plaintiff and the Class have suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, and humiliation.

171.    Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of the Personal Information; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; (vii) loss of the benefit of the bargain; and (viii) emotional distress.  At the very least, Plaintiff and the Class are entitled to nominal damages.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a.      An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.      A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.      An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

     i.      Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

     ii.      Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

     iii.      Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

     iv.      Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is

compromised, hackers cannot gain access to other portions of Defendants' systems;

v.     Ordering that Defendants cease transmitting Personal Information via unencrypted email;

vi.    Ordering that Defendants cease storing Personal Information in email accounts;

vii.   Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

viii.  Ordering that Defendants conduct regular database scanning and securing checks;

ix.    Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

x.     Ordering Defendants to meaningfully educate its current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and personal information to third parties, as well as the steps they must take to protect against such occurrences;

d.    An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.    A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.    An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED:  April 29, 2025

/s/  Casondra  Turner
Casondra Turner (GA Bar No. 418426)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (866) 252-0878
Fax: (771) 772-3086
cturner@milberg.com

A. Brooke Murphy*
MURPHY LAW FIRM
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
E: abm@murphylegalfirm.com

*Counsel for Plaintiff and the Proposed*
*Class*

* *pro hac vice* forthcoming